**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 06-171-01 (HHK)** |
| | **:** | |
| **CARL MICHAEL TAYLOR,** | **:** | |
| | **:** | **Motions Hearing Date:  July 19, 2007** |
| **Defendant.** | **:** | |
| | **:** | |

GOVERNMENTS REPLY TO DEFENSE MOTION TO WITHDRAW GUILTY PLEA

The United States of America by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits this memorandum in opposition to defendant Taylor's

motion to withdraw his plea of guilty to Count One of his Indictment which charged him with

conspiracy to distribute and unlawful possession with intent to distribute fifty grams or more of

cocaine base.  Still, defendant Taylor cites no cases which support his new claim that his plea

should be withdrawn on the basis of mental disease or defect.

*Statement of Fact*

Defendant Taylor, and several associates, both known and unknown to the United States,

have conspired to distribute and possess with intent to distribute Cocaine Base, also known as

"Crack" a controlled substance, in violation of Title 21 United States Code §§ 841(a)(1) and 846.

This conspiracy has venue and jurisdiction in the District of Columbia.  The substances seized

and distributed during this investigation were analyzed by the Drug Enforcement Administration

Laboratory and were determined to in fact be Cocaine Base, also known as "Crack," a controlled

substance.  The Cocaine Base or Crack utilized during the charged conspiracy could be smoked

and ingested by various methods to cause a narcotic or drugged effect.  Defendant Taylor

conspired with various individuals, both known and unknown to the United States to include, but

not limited to: James Underwood and Tamika Burris, between December 2005 and May 2006.

In February 2006, the MPD/MNB was notified through law enforcement channels that the

PG County Police had a Cooperating Defendant ("hereinafter "C-1""), who was basically a life

long D.C. drug dealer who had information which could help them investigate various cases.

MPD Officers SGT Curt Sloan and Inv. Joseph Abdalla met with C-1 and debriefed him.  C-1 is

a cooperating coconspirator who is not indicted herein with Defendants Taylor and Underwood.

He advised them that his largest supplier was Carl Taylor who worked out of Apartment 301,

xxxx x xxxxxx, xxx., and had taken over the apartment from James Underwood who now assists

Taylor in running the crack house.  He also advised that Taylor had a young girl Tamika Burris,

age 16 years-old, a runaway from a group home, working with them to sell the crack out of the

building.  C-1 stated that despite the fact that the building was clean and orderly, as directed by

Taylor, Taylor ran his narcotics business mostly inside the apartment, but outside of the

apartment building too.  Defendant Underwood actively, knowingly, and fully participated in

Defendant Taylor's cocaine base aka crack cocaine conspiracy during the full period of the

charged conspiracy.  Primarily, Defendant Underwood provided the security of the apartment as a

base of operations for Taylor and Underwood distributed the crack and received illicit crack

profits as well.

C-1 began purchasing crack from Taylor at the apartment in December 2005, through

May 2006, because the quantity and quality of Taylor's crack was substantial.  Initially he bought

$10.00 and $ 20.00 quantities, which were always ample or "Phat."  Soon C-1 upgraded to

"Phat" eightballs and then quarter kilogram quantities.  There were several occasions when C-1

observed this crew in possession of approximately a kilogram of crack and tens of thousands of

dollars.  There were many occasions when he would receive his crack or pay his money to

Underwood and Burris as well.  At all times when C-1 would frequent the apartment Taylor and

Burris and various other persons would ingest crack.  Often, Taylor would cut, bag and

disseminate the crack out of the apartment and surrounding area of the apartment building.

On or about March 8, 2006, C-1 was sent into the apartment to make a purchase.  He was

able purchase an eightball for $200.00 from Taylor.  However, it was Burris who served C-1 at

the direction of Taylor.  Underwood was present and was smoking crack at this time.

On March 10, 2006, at approximately 10:00 p.m., members of the MPD/MNB executed a

Superior Court Search Warrant for the apartment.  Detective Kirk Del Po and Inv. Abdalla were

the entry team and secured the front door of Apt. 301.  They met Underwood as he exited Apt.

301 and Del Po asked him if he lived here.  Underwood responded yes, in 301.  Del Po asked him

if he had anything illegal on him and Underwood replied no.  Del Po asked for Underwood's

permission to make sure and Underwood stated yeah, sure, and raised his arms to his side and

above his head.  Del Po patted-down Underwood and in his right front pants pocket he felt what

in his experience was crack packaged in plastic ziplocks.  Del Po removed the items from

Underwood's pockets and found nine yellow zips of crack which field tested positive for cocaine

as determined by Abdalla.  De Po and Abdalla detained Underwood until the arrest team moved

into position.

Soon thereafter, SGT Sloan arrived and performed the knock and announce that they were

police and had a warrant.  A voice from inside Apt. 301 responded who is it?  SGT Sloan replied,

"Police, we have a warrant for this location." Burris answered the door and once the door was opened SGT Sloan again advised that they were the police and had a warrant for the apartment. SGT Sloan immediately observed Taylor make a furtive gesture as he was seated on a couch in the rear of the bedroom. SGT Sloan observed Taylor stuffing items into the cushions of the couch and then reaching behind the couch to a utility access panel which had a swinging face plate. SGT Sloan grabbed Taylor to secure his movement and to protect the persons in the apartment. Once Taylor was secured SGT Sloan noticed that a piece of plastic was hanging out of the utility box outside the face plate. Upon further examination and seizure, SGT Sloan identified that it was a large plastic baggie which contained two large rocks of crack which each weighed approximately five grams. Inside the utility panel was a second large zip which contained approximately twenty grams of crack. Inside the cushions of the couch were numerous empty yellow zips in sufficient quantity to package multiple kilograms of ten and twenty dollar dosage units of crack and ten zips which contained crack. At the foot of the couch was two yellow zips which contained crack, a dinner plate with apparent cocaine residue on it, a razor blade, and loose rubber bands. Underneath the couch and at the foot of the bed across from the couch in the bedroom were thousands of empty yellow zips.

Burris was detained and later searched by a female officer in the apartment bathroom. Inside of her bra cup Officer Pat Dixon found two large rocks of crack which were wrapped in cellophane and ten grams of marijuana. There were numerous burnt marijuana cigarettes and loose zips of marijuana in the living room and bedroom of the apartment. All of these items were seized by or in the presence of Abdalla who field tested the items for a positive response for

cocaine and marijuana.  Additionally, Abdalla seized mail matter from the apartment in Taylor

and Underwood's names, as well as the lease and utility bills to the apartment which were in

Underwood's name.

SGT Sloan ran Burris' name and determined that she was in fact a 16 year-old juvenile

with an outstanding custody order for her apprehension which he executed.  SGT Sloan also

obtained her fingerprint card, arrest photo and a certified copy of her birth certificate.

On September 6, 2006, defendant Taylor plead guilty before this Honorable Court to

Count One, conspiracy to distribute and possess with intent to distribute 50 grams or more of

cocaine base, also known as crack.

ARGUMENT

Defendant's Plea Was Knowing and Voluntary

The government rejects this defendant Taylor's claim and asserts that the defendant had

adequate legal representation and his plea was entered into knowingly, voluntarily and willingly.

Defendant Taylor's choice to agree to the plea was the result of prudence and a rational inquiry

into his prospects, not the result of mental deseise or defect.

Defendant Taylor freely signed a written guilty plea agreement and agreed to abide by it's

terms.   Where a defendant signed a plea agreement he should be bound by it's terms as long as

the agreement was lawful.  United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994), cert.

denied, 514 U.S. 1035, (1995).  This case falls squarely in the arena of United States v. Hyde,

520 U.S. 670 (1997).  In Hyde the Supreme Court held that a defendant may not withdraw from a

guilty plea, unless he demonstrates "a fair and just reason" under Rule 32(e) of the Federal Rules

of Criminal Procedure.  The defendant does not have an absolute right to withdraw his guilty

plea.  United states v. Grant, 117 F.3d 788, 792 .n5 (5th Cir. 1997).  Defendant Taylor now

contends that this court's ruling that his plea was "knowing and voluntary," was incorrect because

the court was unaware of his mental disease or defect.  Even if this were true, defendant Taylor is

not freed from his obligations under the plea agreement.  A defendant is bound by the terms of a

guilty plea even if his decision to enter into the plea was affected by fear.  See United States v.

Farley, 72 F.3d 158, 165 (D.C. Cir.1995) (defendant's claim that he was afraid that his

co-conspirators would testify against him was held not to be persuasive in his attempts to

withdraw guilty his plea).  See also United States v. Buckles, 843 F. 2d 469, 472 (11th Cir.

1988)(the defendant cannot complain of coercion where his counsel employed his best judgement

and recommended a guilty plea). See also United States v. Abreu, 964 F.2d 16 (D.C. Cir. 1992)

(Where the defendant asserted that he plead guilty because he had lost confidence in his

attorney's ability to mount an effective defense because the government had resorted to "ambush

tactics."  Further, such a change in defense strategy did not mean that the defendant did not make

a voluntary and knowing decision.).

       The defendant now claims that he is effected by a mental disease or defect which should

allow him to withdraw his plea.  This claim is incompatible with an examination of the record.

This is the second time that defendant Taylor has plead guilty before this Honorable Court, both

in this case 06-171 and Criminal Case No. 01-369.   The District Court does not need to permit a

defendant to withdraw a guilty plea unless his attorney has "affirmatively misrepresented the

consequences of a guilty plea."  See United States v. Russell, 686 F.2d 35, 42 (D.C. Cir. 1982).

The defendant entered into a discourse with the court in which the court articulated that he was

facing a sentence of 120 months to life.   The court further asked defendant Taylor if he understood what had been discussed to that point and defendant Taylor responded that he understood.

This court more than satisfied the need for informing the defendant of the relevant guidelines surrounding his sentence.  See United States v. Hyde, 520 U.S. 670 (1997) (Rule 11 requires that the court must address the defendant in open court and inform the defendant of, and determine that, the defendant understands the consequences of pleading guilty.)  See also United States v. Farley, 72 F.3d 158 (D.C. Cir. 1995) (Where the defendant engaged in a similar exchange with the judge and the court opined that "if Farley had such a misunderstanding it should have evaporated during the [R]ule 11 colloquy.").

In United States v. McKoy, 645 F.2d 1037, 1039 (D.C. Cir. 1981), the Court of Appeals rejected the defendant's claim that he was pressured by his counsel to admit guilt (Id. at 1039). The Court of Appeals noted that the defendant knew he was facing a severe sentence and had multiple experiences with the criminal justice system, as does Defendant Taylor, that included the entering of numerous guilty pleas.  The Court pointed out that the trial judge informed the defendant that no bargain had been made about the sentence and the court would decide his final sentence (Id. at 1037).

Defendant Taylor's Does Not Have A Fair And Just Reason to Withdraw His Guilty Plea

In the instant case, the record is devoid of facts to support a finding that it would be "fair and just" to allow the defendant to withdraw his previously entered guilty plea, even in the face

of his now claimed mental disease or defect.  See United States v. Hyde, 520 U.S. 670 (1997).

See also United States v. Cray, 47 F.3d 1203, 1205 (D.C. Cir. 1995) citing Kercheval v. United

States, 274 U.S. 220, 224 (1927)(cases which articulated the fair and just standard).

When this court asked Defendant Taylor if it were true that he intended to distribute or

sell the crack cocaine that he had in his possession, defendant Taylor replied, Yeah.  The

defendant admitted to this court that he was guilty during his providence hearing.  Allowing him

to withdraw his guilty plea "defeats the purpose of the plea hearing and diminishes the

significance of entering pleas." See United States v. Grant, 117 F.3d 788, 791 (5th Cir. 1997)

(where a defendant repeatedly acknowledged his guilt and the court satisfied it's Rule 11

obligations, allowing the withdrawal of a guilty plea is contrary to Rule 11's purpose).  See also

United States v. Cray, 47 F.3d at 1205 (stating that withdrawal of a guilty plea is rare).

When defendant Taylor answered the Rule 11 questions affirmatively he acknowledged

that his plea was "knowing and voluntary."  See United States v. Farley, 72 F.3d at 162 (The

defendant's mere allegation that he would have pleaded not guilty and would have gone to trial

had his lawyer adequately informed him of the correct information about his sentence was not

compelling where the defendant had not even offered a hint of a defense much less a suggestion

that he could have succeeded if he had gone to trial).  Clearly, the parties to defendant Taylor's

two pleas before this Honorable Court in Criminal Case Nos. 01-369 and 06-171, were aware of

their various roles as defense counsel, government prosecutor, and judge.  See Brady v. United

States, 397 U.S. 742, 748 (1970) (The court in Brady discussed that a guilty plea is, "accepted

only with great care.").  See also United States v. McKoy, 645 F.2d at 1038 (The Court of

Appeals found that reversal of a guilty plea is uncommon.).

It takes a powerful argument to convince the Court of Appeals that a defendant's plea should be withdrawn and defendant Taylor has not met this standard.  See United States v. Baker, 514 F. 2d 208, 221 (D.C. Cir. 1975) (In Baker, the Court of Appeals held that even where foot soldiers in the Watergate break-in who plead guilty because they believed themselves to be part of a secret confidential and sensitive national security operation could not claim coercion.  These defendants believed that they had been coerced into pleading guilty in the interest of National Security.).  Among all of the parties present none felt that defendant Taylor's wishes had been ignored or that he was being coerced into a perjured plea.  The defendant himself never objected to anything that was happening during either of his two plea hearings, during his incarceration, or period of supervised release.  The Court in Cray stated that a defendant must do more than make a general denial in order to put the government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury.  Cray, 47 F.3d at 1209).  Defendant Taylor stood in court and accepted responsibility for his crimes.  See United States v. Everett, 336 F. 2d 979, (D.C. Cir. 1964) (refused to allow withdrawal of a guilty plea on the charge where the defendant admitted his guilt during the guilty plea inquiry.).

In this same vein, in the case of Royal v. Taylor,188 F. 3d 239, 243 (4th Cir. 1999), cert. denied 519 U.S. 933 (1999) and 516 U.S. 1097 (1999), Royal's petition for habeas corpus from the lower court's decisions were rejected by the Supreme Court.  In the court below, defendant Royal had plead guilty to capital murder, was sentenced to death and his claims of error due to his claim of actual innocence, Brady claim and ineffective assistance of counsel were rejected on direct appeal and his conviction based on his guilty plea and sentence to death were affirmed.

The Court of Appeals for the 4th Circuit, on habeas corpus, rejected Royal's new claims of

innocence since Royal could not demonstrate that his counsel was ineffective or that Royal's plea

was improperly taken and accepted and since Royal understood that the maximum penalty he

faced was death. Id. at 248-249 citing Strickland v. Taylor, 466 U.S. 668, 687-91 (1984)

(Strickland requires proof of both ineffective representation and actual prejudice.); and Hill v.

Lockhart, 474 U.S. 52, 57-59 (1985) (In order to demonstrate prejudice to withdraw a plea the

defendant must show, "that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial.")).  Defendant Taylor

cannot meet his burden of proof on this score.

The defense further skims over the issue of prejudice to the government as a result of

withdrawing this plea as merely incidental and contends that there will be "no harm to the

government.".  Since Baker, courts have scrutinized the level of prejudice that the government

would suffer if a defendant was allowed to withdraw a guilty plea.  Baker, 514 F.2d at 200-202.

In this case the defendant has been given a summary of the government's case against him, and

has agreed to help in the prosecution of other cases of which he has knowledge.  To be forced at

this late date to start all over and proceed to trial of defendant Taylor would be substantially

prejudicial.

It is well established in this jurisdiction, that a court should not accept or condone

justifications for withdrawing a guilty plea that amount to "post hoc explanations that are rooted

in the fear of a substantial sentence." McKoy, 645 F.2d at 1038.  Further, it has been noted in

numerous cases that a guilty plea can and should be upheld if there has been no Rule 11

violation, even in cases where the government suffers no prejudice.  See United States v. Horne,

987 F.2d 833, 877 (D.C. Cir. 1993) (which denied defendant's motion to withdraw his guilty plea

in case where a proper Rule 11 hearing occurred even though withdrawing the plea would not

prejudice the government.)  Prejudice against the government is substantial in this case and

would seriously impair the government's efforts in both this case and the other cases in which the

defendant was involved.

Accordingly defendant Taylor should not be allowed to withdraw his guilty plea in this

case, particularly since he cites no legal authority to support his claim.  Furthermore, he should

be bound by his plea and his plea agreement as accepted by this Court.

WHEREFORE, it is respectfully requested that this pleading be made part of the record.

Respectfully submitted,

JEFFERY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 246-470

By:    _____

MARTIN DEE CARPENTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been served ECF to
jqbutler1@hotmail.com; and mailed, postage prepaid, this 13th day of June, 2007, to counsel
for Defendant Taylor, James Q. Butler, Esquire, Via first class mail, postage prepaid, and by
facsimile to (202) 223-3039, 10th Floor, 818 18th Street, Northwest, Washington, D.C.  20006;
Office No. (202) 223-6767.

_____

MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
(202) 514-7063